(C.R.D. 80-6)

SPRAGUE ELECTRIC COMPANY, PLAINTIFF, *v.* UNITED STATES (CAPAR COMPONENTS CORP., PARTY-IN-INTEREST), DEFENDANT

Court No. 77-9-03056

(Dated May 23, 1980)

*Frederick L. Ikenson,* Esq., for the plaintiff.
*Alice Daniel,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation, and *Sidney N. Weiss,* trial attorney, Esqs., for the defendant.

NEWMAN, Judge: Pursuant to rules 12.1 and 4.12 of this court, plaintiff has moved for a rehearing and reconsideration of certain aspects of the decision entered in this case on March 27, 1980 (C.R.D. 80-3).

Briefly, the background of this litigation is as follows: Plaintiff, an American manufacturer of tantalum electrolytic fixed capacitors, has brought this action under 19 U.S.C. 1516(c) (1976) challenging the negative injury determination of the U.S. International Trade Commission (Commission) in investigation No. AA1921-159 (41 F.R. 47604 (1976)), under the Antidumping Act of 1921, as amended (19 U.S.C. 160, et seq. (1970)). That investigation involved tantalum electrolytic fixed capacitors imported from Japan which the Department of the Treasury (Treasury) had determined were being or were likely to be sold in the United States at less than fair value (LTFV) within the meaning of the Antidumping Act, as amended.

Plaintiff contests the Commission's negative injury determination on several grounds, and the parties filed cross-motions for summary judgment contending that there is no genuine issue as to any material fact. In C.R.D. 80-3, I found, inter alia, that in making its negative determination, the Commission relied upon substantially erroneous import statistics which grossly understated the true value of Japanese tantalum capacitor imports. I agreed with the defendant's contention that if the Commission's original determination could not be sustained because of the incorrect import statistics, an appropriate remedy

would be to stay the proceedings in this court pending a new determination by the Commission in light of the correct statistical information. Accordingly, my order denied the cross-motions for summary judgment, and further ordered:

2. Proceedings in the instant case shall be stayed pending a reconsideration by the Commission of its original determination in investigation No. AA1921–159 and the taking of a new vote on the question of whether, in light of the correct import statistics for tantalum electrolytic fixed capacitors from Japan, sales of such merchandise at LTFV were injuring or were likely to injure an industry in the United States within the meaning of the Antidumping Act of 1921, as amended; and the Commission may conduct any further proceedings which it deems appropriate, but consistent with this order;

3. The Commission shall, through counsel for defendant, submit to the court within 90 days from the date of entry of this order (on or before June 25, 1980) its new determination, whether affirmative or negative, together with a complete statement of findings and conclusions, and the reasons or bases therefor, on all material issues of fact or law presented, including the materiality of the corrected import statistics on the Commission's new determination.

In support of its motion for rehearing, plaintiff urges that in making its new determination, the Commission "should be instructed to include in its deliberations the consideration of Nippon Electric Co.'s plans to increase productive capacity for, and exportation to the United States of, epoxy dipped tantalum electrolytic fixed capacitors" (memorandum, at 5).

In C.R.D. 80–3, I made reference to footnote 3 of the Commission majority's statement of reasons (41 F.R. 47605), and agreed with the approach of Commissioner Moore and Commissioner (now Chairman) Bedell in their finding of no likelihood of injury. As stated in footnote 3, Commissioners Moore and Bedell believed that "since no LTFV margins were found in NEC [Nippon Electric Co.] sales of epoxy dipped capacitors, * * * NEC's anticipated increase in exports of such capacitors to the United States should not be used as a basis for a finding of likelihood of injury." Nevertheless, as also pointed out in C.R.D. 80–3, in its statement of reasons the Commission majority found there was no likelihood of injury as a result of the LTFV imports, notwithstanding a planned expansion of Japanese capacity to produce tantalum capacitors in 1976 and 1977, and an anticipated increase in 1977 exports by one Japanese producer.

Upon further review of the issue, I have determined that the Commission should additionally consider in its deliberations on remand, the effect of Nippon's plans to increase productive capacity for, and exportation to the United States, of epoxy dipped tantalum electrolytic fixed capacitors, as requested by plaintiff. I am persuaded to agree with this view by the cogent rationale of Commissioner Parker

in his statement of reasons for affirmative determination, in which he concludes that Treasury's decision not to sever or eliminate Nippon's "dipped" capacitors from the class or kind of tantalum capacitors embraced by its LTFV determination (see C.R.D. 80–3, footnote 6) is binding upon the Commission as a matter of law; and "that (the) Commission has no authority to refine or modify the class or kind of merchandise found to be, or likely to be, sold at LTFV". Therefore, with respect to plaintiff's request that the Commission "should be instructed to include in its deliberations the consideration of Nippon Electric Company's plans to increase productive capacity for, and exportation to the United States of, epoxy dipped tantalum electrolytic capacitors", the motion for rehearing is granted.

The only other issue raised by the present motion that warrants comment is whether, as contended by plaintiff, the decision in C.R.D. 80–3 constitutes the sustaining in part of plaintiff's cause of action within the purview of 19 U.S.C. 1516(g)(1976), and hence whether, pursuant to that statute, liquidation of entries of the subject merchandise should be suspended. I am unable to agree with plaintiff's contention.

In C.R.D. 80–3, plaintiff's motion for summary judgment was denied, and there was no motion for partial summary judgment. In staying the proceedings before the court pending reconsideration by the Commission of its original determination and the taking of a new vote, the court has not thereby sustained in part plaintiff's cause of action. In point of fact, originally plaintiff opposed the granting of a remand of the proceedings to the Commission. Finally, with regard to the merits, there has as yet, been no judicial decision in this case that an affirmative injury determination by the Commission was required as a matter of law. Significantly, C.R.D. 80–3 states: "If in light of the correct import statistics, the Commission can still demonstrate a rational basis for a negative determination, this court will be obliged to sustain such determination." For the foregoing reasons, it would be improper at this juncture to require the Customs Service to suspend the liquidation of entries of the subject merchandise under 19 U.S.C. 1516(g).

I have carefully considered plaintiff's other arguments in support of its motion for rehearing, and find them lacking in merit.

For the reasons expressed herein, it is hereby ordered:

1. That plaintiff's motion for rehearing is granted to the extent that the Commission is directed to consider in its deliberations on remand the effect of Nippon Electric Co.'s plans to increase productive capacity for, and exportation to the United States, of epoxy dipped tantalum electrolytic fixed capacitors.

2. That the decision in C.R.D. 80–3 is adhered to in all other respects, and the application is denied as to all other issues raised by plaintiff's motion for rehearing.